IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVLLE DIVISION
1:02CV254-MU-02

| | |
|---|---|
| RONNIE KEITH LONG,                )<br>    Plaintiff,                      )<br>                                   )<br>    v.                             )<br>                                   )<br>SID HARKLEROAD, Supt. of           )<br>  Marion Correctional In-          )<br>  stitution;[1]                    )<br>ANGELA TWITTY, Unit Mana-          )<br>  ger at MCI; and                  )<br>  Jail; and                        )<br>JONATHAN STINES, Unit Of-          )<br>  ficer at MCI,                    )<br>    Defendants.                  )<br>_____)   | ORDER |

**THIS MATTER** comes before the Court on the plaintiff's civil rights Complaint pursuant to 42 U.S.C. §1983, filed October 30, 2002; on the "Defendants' Motion For Summary Judgment," filed February 26, 2003; and on the plaintiff's "Letter-Brief In Opposition To Motion For Summary Judgment," filed July 7, 2003.

After careful consideration, for the reasons stated herein and for the further reasons set forth in the defendants' supporting Brief, the defendants' Motion for Summary Judgment will be <u>granted</u>; and the plaintiff's Complaint will be <u>dismissed</u>.

---

[1] Marion Correctional Institution is hereafter referred to as "MCI."

# I. FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2002, the plaintiff filed the subject Complaint, attempting to set forth several claims under the First, Fourth, Fifth and Fourteenth Amendments in connection with the alleged confiscation of a certain legal document belonging to him, and in connection with one of the defendant's handling of an unrelated grievance which he filed.

Affidavits which were submitted by the defendants--the parties with the burden of proof on the instant Motion–-tend to show that on September 11, 2002, the plaintiff gave a fellow-inmate his copy of the "State's 24-page Response to Petition for Writ of Certiorari" in an attempt to solicit information concerning the meaning of one or more legal terms, i.e., legal assistance, from such inmate. At that time, defendant Stines approached the inmate holding the plaintiff's document and directed him to give it turn it over. The inmate gave the document to Stines. Stines then took the document to defendant Twitty and conferred with her about the matter.

Twitty then returned and advised the plaintiff that the document had been confiscated due to the plaintiff's violation of prison rules which prohibit inmates from seeking or giving legal assistance to one another. When the plaintiff asked Twitty to give him the document, Twitty advised him that the document would be retained and used as evidence in a disciplinary proceeding

concerning the incident. Thereafter, the plaintiff submitted a grievance concerning that matter. However, inasmuch as the plaintiff ultimately was convicted of having violated the aforementioned prison rule, his grievance was rejected.

The defendants' evidentiary forecast also reflects that the plaintiff filed a second grievance directly with defendant Harkleroad, that time relating to his "belie[f]" that a piece of his outgoing legal mail had been intercepted by an MCI staff-member. However, defendant Harkleroad rejected that grievance.

Consequently, on October 30, 2002--less than two months after the confiscation took place, the plaintiff filed the instant civil rights action. By his Complaint, the plaintiff seeks tens of thousands of dollars in damages from the defendants.

On February 26, 2003, the defendants filed their Answer to the plaintiff's Complaint. By that document, the defendants assert that although the plaintiff's document was confiscated for his violation of the relevant prison rule, and initially was kept as evidence to be used during the plaintiff's disciplinary hearing, such document was returned to the plaintiff on February 20, 2003.

Furthermore, the defendants admit that the plaintiff submitted the grievance form concerning his "belie[f] of a violation directly to defendant Harkleroad; and that such grievance was rejected by him. Ultimately, however, the defendants assert that

3

they did not violate any of the plaintiff's constitutional rights; and that for that reason, along with a number of other equally compelling ones, the plaintiff's Complaint should be dismissed.

In addition to that Answer, on February 26, 2003, the defendants also filed a Motion for Summary Judgment, seeking the summary dismissal of the plaintiff's Complaint. By that document, the defendants explain in greater detail their position concerning the dismissal of the plaintiff's Complaint.

Specifically, counsel for the defendants argues that the subject document properly was confiscated due to the plaintiff's violation of Division of Prison Regulation 2G.029 which forbids inmate-to-inmate legal assistance. Further, counsel argues that since the plaintiff's certiorari petition had been denied on the day <u>before</u> the document in question was confiscated, the plaintiff cannot possibly demonstrate that he suffered any actual harm as a result of the defendants' conduct. Nor can the plaintiff prevail on his claim for compensation for mental anguish and emotional injury due to his failure to demonstrate that he suffered any corresponding physical injury as a result of this matter.

As to the plaintiff's claim against defendant Harkleroad, counsel admits that a grievance concerning the mail incident was submitted to and summarily rejected by Harkleroad. However, counsel explains that the subject grievance was rejected inasmuch

4

as the plaintiff had by-passed the proper grievance procedure, but had failed to identify an emergency which required Harkelroad's immediate attention.  Indeed, counsel reports that such grievance was returned to the plaintiff with a memo that instructed him to re-submit his grievance through the proper procedures.  Nevertheless, counsel reports that the plaintiff did not re-submit that matter; therefore, the matters set forth in the grievance were not fully exhausted, and cannot be a part of this action.

For his part, the plaintiff has attempted to rejoin the defendants' persuasive arguments with his Letter-Brief, filed July 7, 2003.  However, the plaintiff's attempt falls woefully short of rescuing his failing claims.  To be sure, the plaintiff's efforts amount to little more than a restatement of his claims, along with the insertion of some belated embellishments which are wholly unsupported by this record.

For instance, the plaintiff has submitted a letter from the N.C. Prisoner Legal Services, explaining that while they do not provide copies, perform legal research, or provide other clerical or litigation support services, that agency <u>does</u> advise inmates about the law, represent them in court, evaluate cases, give legal opinions and advise inmates on how to take action on their own behalf.  Thus, such letter actually contradicts the plaintiff's foundational premise that he was entitled to solicit

assistance from a fellow inmate because he did not have any other means of assistance with his question.

Likewise, the plaintiff submitted an affidavit from the inmate to whom he gave the State's Response in order to obtain help. Such affidavit reflects that, more than simply asking a question, the plaintiff turned over the subject document to such inmate for him to review. Thus, contrary to the plaintiff and the affiant's representation, their conduct could properly be interpreted, just as it was, as violating the NCDOC's policy concerning inmates assisting one another.

Notably, with regard to the question of whether the plaintiff's claim against defendant Harkleroad was exhausted by him, the plaintiff essentially abandons that claim in that he concedes that his proposed emergency grievance was returned to him; and that he "did not resubmit [the] grievance because he felt it [the situation] was resolved since no further action was taken against him." Thus, this Court has found nothing in the plaintiff's Letter-Brief which warrants allowing the plaintiff to continue with this action.

## II. ANALYSIS

### A. Standard of review on Motion For Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment when the pleadings and other relevant documents reveal that "there is no genuine issue as to any

6

material fact and . . . the moving party is entitled to a judgment as a matter of law." See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc), cert. denied, 498 U.S. 1109 (1991).

A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment." Id. at 249-50.

### B. **The plaintiff has failed to demonstrate that defendants Stines and Twitty violated his rights.**

As counsel for the defendant has properly noted, "the abstract value of a constitutional right may not form the basis for §1983 damages . . . ." Memphis Community School District v. Stachura, 477 U.S. 299, 308 (1986). Thus, in order for the plaintiff to prevail on his claim of denied access to the courts --even assuming an unlawful confiscation--the plaintiff still must demonstrate that he suffered actual injury, i.e., that his efforts to pursue a legal claim were hindered. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). However, as has been noted, defense

7

counsel's evidentiary forecast forecloses both of these assertions.

To be sure, counsel for the defendants evidentiary forecast tends to establish that the plaintiff's document properly was confiscated and retained after the plaintiff was caught attempting to obtain legal assistance from a fellow inmate. As such, the plaintiff's conduct was a violation of NC Division of Prisons regulations.[2] In fact, the plaintiff concedes that he was charged and convicted of that violation after a disciplinary hearing was held. Thus, the plaintiff cannot establish a violation of his rights on the basis of the confiscation.

Moreover, the plaintiff cannot possibly demonstrate that he suffered any actual harm as a result of the less than five-month retention of his document. That is, as counsel for the defendants has established, the document in question was a copy of the State's Response to the petitioner's certiorari petition. Consequently, this was not some document to which the plaintiff was required to rejoin at the risk of losing any of his rights.

Most critically, the plaintiff does not deny that the case in which that document was filed had been concluded the day before the document was confiscated. Under North Carolina law,

---

[2]Such regulations prohibiting inmate-to-inmate legal assistance are enforceable in North Carolina because the State has established a "constitutionally acceptable" alternative in the form of the N.C. Prisoner Legal Services program. See Wrenn v. Freeman, 894 F.Supp. 244, 249-50 (E.D.N.C. 1995). Thus, the plaintiff is simply mistaken as to his assertion of a First Amendment right to obtain legal assistance from a fellow-inmate.

the plaintiff had no legal right to seek any further appeal of that decision. See N.C.R.App.P. 21(e) (noting that "such petitions shall be . . . determined by the Court of Appeals and the Supreme Court will not entertain petitions for further discretionary review in such cases."). Equally notable, the plaintiff does not claim that he attempted to obtain another copy of the document from its author, but was unable to do so. Therefore, in the absence of any evidence of a resulting legal or physical injury, the plaintiff is not entitled to any monetary or other relief on this claim.

### C. The plaintiff cannot prevail on his allegations against defendant Harkleroad.

As for the plaintiff's allegations against defendant Harkleroad, as defense counsel has properly shown, the plaintiff has not exhausted his administrative remedies with respect to the matters about which his grievance to Harkleroad related. Accordingly, this Court clearly lacks the authority to address those matters in this action. See 42 U.S.C. §1997e (noting that under the PLRA, prisoners must exhaust all available administrative remedies before suing to challenge prison conditions); see also Booth v. Churner, 532 U.S. 731 (2001) (affirming the enforcement of exhaustion requirement).

Finally, with regard to defendant Harkleroad's rejection of the grievance in question, again, counsel for the defendants has forecast evidence which establishes that such conduct was appro-

9

priate. Indeed, as the plaintiff has conceded, the grievance concerned his "belie[f] that an MCI staff-member unlawfully intercepted a piece of his outgoing mail. Such mail was a letter to a local magistrate complaining about the document confiscation matter. Clearly, then, the grievance did not relate to an emergency, thereby entitling the plaintiff to by-pass the normal grievance procedures.

Most critically, the plaintiff concedes his belief that the subject matter was "resolved" because he had no more difficulties with his mail. Therefore, in the absence of a constitutional violation, the plaintiff cannot obtain any type of relief, injunctive or otherwise, on his claim against Mr. Harkleroad.

### III. CONCLUSION

The record before the Court establishes that there are no genuine issues of material fact, and that the defendants are entitled to judgment as a matter of law. Accordingly, the plaintiff's Complaint must be summarily dismissed.

### IV. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. That the defendants' Motion for Summary Judgment is **GRANTED;** and

2. That the plaintiff's Complaint is **DENIED** and **DISMISSED.** See Rule 56 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Signed: March 8, 2006

Graham C. Mullen
United States District Judge